PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Jay Hagan WILLIAMS,
Defendant-Appellant.

No. 81SA212.

Supreme Court of Colorado,
En Banc.

Sept. 27, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele, Asst. Atty. Gen., Denver, for plaintiff-appellant.

Myers, Woodford & Hoppin, P. C., Charles T. Hoppin, Denver, for defendant-appellant.

QUINN, Justice.

The defendant, Jay Hagan Williams, appeals his convictions on two counts of felony theft by receiving while engaged in the business of buying, selling, or otherwise disposing of stolen goods for a profit. Section 18–4–410, C.R.S.1973 (1978 Repl. Vol. 8). He claims that the Double Jeopardy Clauses of the United States and Colorado Constitutions barred his prosecution and conviction on these two counts because at a prior prosecution for the same statutory offense evidence of the transactions underlying his present convictions was admitted in order to prove that, when the principal charge of theft by receiving occurred, the defendant was engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit. We agree with the defendant's claim and reverse his convictions.[1]

---

1. This appeal was originally filed in the Court of Appeals but was transferred to this court because of the constitutional challenge to section 18–4–410(6), C.R.S.1973 (1978 Repl. Vol. 8). Sections 13–4–102(1)(b) and 13–4–110, C.R.S.1973. Our disposition renders it unnecessary to consider other issues raised by the defendant, namely: that section 18–4–410(6), C.R.S.1973 (1978 Repl. Vol. 8), is unconstitutionally vague; that the second prosecution vi-.

## I.

In the course of an undercover investigation of fencing activities, law enforcement officials, posing as thieves who were attempting to dispose of stolen goods, sold several items of property to the defendant on three separate occasions: five General Electric television sets on March 29, 1978; twenty Summet tires on April 5, 1978; and a Skill Brand Roto Hammer, four carbide drill bits, and a Home-Lite portable generator on May 11, 1978.[2] The defendant was charged in three separate informations with the crime of theft by receiving on the respective dates of the purchases—March 29, April 5, and May 11, 1978. Each information alleged that the primary act of theft by receiving involved property with a value of $200 or more but less than $1,000, and that each act occurred while the defendant was "engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit." The defendant moved to consolidate the three cases for trial but the district court denied the motion.

The defendant was first tried on the May 11th incident involving the Roto Hammer, drill bits and portable generator. During the trial, evidence of the defendant's purchases of the television sets on March 29 and the tires on April 5 was admitted to establish that the defendant on May 11 was engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit. The jury returned a verdict of guilty which read:

"We, the jury, find the Defendant, Jay Hagen [sic] Williams, guilty of count 1, theft by receiving while engaging in the business of buying, selling, or otherwise disposing of stolen goods for profit."

The defendant was sentenced to a term of five to eight years on this conviction.[3]

After the first prosecution the defendant moved to dismiss the two pending charges which arose out of the March 29th and April 5th purchases on the ground that the prosecution for these offenses would violate the double jeopardy prohibition. The court denied the motion, concluding that the two pending charges involved "ultimate issues of fact that ... are separate and apart from the issues" resolved by the former conviction. The court also, pursuant to the defendant's motion, consolidated for trial the two pending counts. The defendant and the prosecution agreed to a trial to the court upon stipulated facts, with the defendant expressly reserving his right to appeal his double jeopardy claim. The stipulation provided that the court could determine the defendant's guilt or innocence on the basis of the evidence admitted in the former prosecution.

The court found the defendant guilty of theft by receiving in connection with the transactions on March 29 and April 5, 1978, and also found that when the offenses were committed the defendant was engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit.[4] The

olated section 18–1–302, C.R.S.1973 (1978 Repl. Vol. 8), which prohibits a second prosecution where, under specified statutory conditions, the second prosecution is for a violation of a different provision of law than the former prosecution or is based on facts different from those involved in the first prosecution; that the second prosecution was barred by the compulsory joinder statute, section 18–1–408, C.R.S. 1973 (1978 Repl. Vol. 8); that evidence admitted at trial was seized during an unconstitutional search of the defendant's residence; that the trial court's initial refusal to consolidate the three informations violated due process of law under the United States and Colorado Constitutions; and that the trial court erred in admitting various items of property seized from the defendant's residence because their prejudicial character outweighed their relevancy.

2. Because we resolve this case on the basis of the defendant's double jeopardy claim, we restrict our statement of the facts to that issue only.

3. The defendant's conviction was affirmed by the Court of Appeals in an opinion not selected for official publication, *People v. Williams,* (No. 79CA1038, announced June 11, 1981). A petition for certiorari was denied by this court on August 24, 1981.

4. The trial court noted in its finding of guilt following the second trial that it had heard "all the evidence [in the earlier trial], which also encompassed, based on previous rulings by the Court in that case, evidence of [the two counts presently charged] ...."

defendant was sentenced to concurrent terms of five to eight years on each count, to be served concurrently with the earlier sentence imposed for the May 11th transaction. This appeal followed.

## II.

■ The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused from being placed in jeopardy twice for the same offense. *U.S. Const.* Amend. V; *Colo.Const.* Art. II, Sec. 18. Although this constitutional guarantee is simply stated, the decisional law in the area has been characterized as "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275, 284 (1981). The multiple purposes of this constitutional guarantee were summarized in *Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977):

> "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' *North Carolina v. Pierce,* 395 U.S. 711, 717, 23 L.Ed.2d 656, 89 S.Ct. 2072 [2076] (1969) . . . . Where successive prosecutions are at stake, the guarantee serves 'a constitutional policy of finality for the defendant's benefit.' *United States v. Jorn,* 400 U.S. 470, 479, 27 L.Ed.2d 543, 91 S.Ct. 547 [554] (1971) (plurality opinion). That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal . . . and from attempts to secure additional punishment after a prior conviction and sentence . . . ."

■ The established test for determining whether two offenses are sufficiently distinguishable to allow successive prosecutions for separate statutory offenses is whether "each [statutory] provision re-quires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974); *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973). If the two offenses are not sufficiently distinguishable to satisfy this test, the Double Jeopardy Clause will bar not only successive prosecutions but also the imposition of consecutive sentences at a single trial. *Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2226, 53 L.Ed.2d at 194.

■ In this case, however, both prosecutions involved the same statutory offense, namely, section 18–4–410, C.R.S.1973 (1978 Repl. Vol. 8), which provided as follows:

> "(1) Except as provided in subsection (6) of this section, a person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "(4) Where the value of the thing involved is two hundred dollars or more but less than ten thousand dollars, theft by receiving is a class 4 felony.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "(6) When the value of the thing involved is two hundred dollars or more and the person committing theft by receiving is engaged in the business of buying, selling, or otherwise disposing of stolen goods for a profit, theft by receiving is a class 3 felony." [5]

The determination of whether a successive prosecution for the same statutory offense is barred by double jeopardy principles involves, first, an examination of the scope of prosecution authorized by the statutory prescription, and, next, an examination of the factual components of each prosecution and

---

**5.** On the dates of the offenses a class 4 felony was punishable by a sentence of one day to ten years and a class 3 felony by a sentence of five to forty years. Section 18–1–105(1), C.R.S. 1973 (1978 Repl. Vol. 8).

the evidence in support thereof. *See, e.g., Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

■ While it is left to the legislature to establish and define offenses, once it has "defined a statutory offense by its prescription of the 'allowable unit of prosecution,' . . . that prescription determines the scope of protection offered by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this [legislative] choice." *Id.* at 69–70, 98 S.Ct. at 2181–82, 57 L.Ed.2d at 57. If a subsequent prosecution for the same statutory offense requires proof of the same facts upon which a conviction under the first prosecution was based, then the second prosecution would be barred under the "same offense" prohibition of the Double Jeopardy Clause. *See, e.g., Sanabria v. United States, supra* (where defendant charged with federal offense of being connected with an illegal gambling business, and trial court erroneously granted a judgment of acquittal because of insufficient evidence of the defendant's connection with a "horse betting" operation, government prohibited from prosecuting defendant for connection with an illegal gambling business involving "numbers betting" operation, the Court stating that "[t]he Government having charged only a single gambling business, the discrete violations of state law which that business may have committed are not severable in order to avoid the Double Jeopardy Clause's bar on retrials for the 'same offense' "); *Brown v. Ohio, supra* (where defendant previously convicted of joyriding, his subsequent prosecution and conviction for car theft reversed because both charges were based on different parts of a nine-day interval and "[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units"); *In Re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) (defendant's conviction for cohabiting with two wives over two and one-half year period barred his subsequent conviction for adultery with one of them on the day following the end of that period because cohabitation includes sexual intercourse and this element "was the integral part of the adultery charged in the second indictment, and was covered by and included in the first indictment and conviction"). This "same offense" prohibition of the Double Jeopardy Clause is codified in section 18–1–301(1)(c), C.R.S.1973 (1978 Repl. Vol. 8), which provides:

"(1) If a prosecution is for a violation of the same provision of law and is based upon the same facts as a former prosecution, it is barred by the former prosecution under the following circumstances:

\* \* \* \* \* \*

"(c) The former prosecution resulted in a conviction."

## III.

■ The statutory offense charged in both prosecutions—theft by receiving while engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit—is a hybrid crime involving two principal components. It requires a primary act of theft by receiving and, also, what might be characterized as the "fencing" element. The primary act of theft by receiving includes the elements of receipt of property valued at a certain amount or more, knowledge or belief that the property had been stolen, and the intent to deprive the lawful owner permanently of the property received. Section 18–4–410(1), C.R.S. 1973 (1978 Repl. Vol. 8). The "fencing" element of the offense requires the defendant, at the time of the primary act of theft by receiving, to be "engaged in the business of buying, selling, or otherwise disposing of stolen goods for a profit." Section 18–4–410(6), C.R.S.1973 (1978 Repl. Vol. 8); *People v. Tumbarello,* 623 P.2d 46, 47 n. 1 (Colo.1981) ("Subsection (6) is aimed at professional 'fences' and imposes the most severe punishment under the theft by receiving statute.")

■ The "fencing" element of the crime necessarily includes the culpability elements of knowledge and of the specific intent to

permanently deprive, as well as all the other essential elements of the crime of theft by receiving. Unless the "fencing" proscription of the statute is construed to require the same *mens rea* as theft by receiving, the "fencing" element of the offense would be transformed into a crime of strict liability. We cannot attribute to the legislature an intent to upgrade an offense to a class 3 felony for innocent and nonculpable acts of purchase, sale, or other disposition of property. Rather, we believe the "fencing" element of the offense connotes an ongoing course of conduct involving the knowing purchase or sale or other disposition of stolen goods for a profit with the specific intent to deprive the lawful owner permanently of the use or benefit of such goods.[6]

Viewing section 18–4–410 as the "allowable unit of prosecution" it becomes apparent that this statute permits the government to combine in one unitary prosecution not only the primary act of theft by receiving as the primary basis for criminal liability but also prior offenses of the same character as the legal predicate for the "fencing" element of the charge. Under these circumstances we must examine the factual components of the separate prosecutions and the evidence offered in support thereof in order to determine whether the defendant's convictions for the transactions on March 29 and April 5, 1978, were based upon the same facts and evidence utilized by the People to obtain a conviction in the former prosecution.

■ In the first prosecution the primary charge of theft by receiving involved the defendant's purchase on May 11, 1978, of the Roto Hammer, four drill bits and the portable generator from agents of the Lakewood Department of Public Safety. The "fencing" ingredient of the charge, as established by the People's evidence, consisted of the defendant's purchase on March 29, 1978, of the five General Electric televi-

sion sets and his subsequent purchase on April 5, 1978, of the twenty Summet tires. The second prosecution was for these latter transactions of March 29 and April 5. It is thus obvious that the second prosecution was predicated upon the very same acts of theft by receiving upon which the prosecution relied to obtain a conviction under the "fencing" element of the first prosecution.

That the charges in the subsequent prosecution required the People to prove the "same offenses" adjudicated in the first prosecution is further demonstrated by the evidence actually admitted in the second prosecution. The written stipulation presented to the court prior to the commencement of the second prosecution stated:

> "Were this case to be tried to a jury on the scheduled trial date ... the People would present all of the same evidence that they presented in [the trial based on the May 11th incident].

> \* \* \* \* \* \*

> "In the interests of justice, and [of] avoiding unnecessary time ... the People and the defendant agree that the court may determine defendant's guilt or innocence on the charges contained in counts one and two ... by considering the evidence presented in [the previous trial], on the following terms and conditions:

> (a) Prosecution's evidence consists of that which the prosecution introduced in [the previous trial] ...."

Since the prosecution's evidence necessary to support the two charges in the subsequent prosecution consisted of the same facts and evidence that constituted the basis of the defendant's conviction for the "fencing" component of the charge in the first trial, the successive prosecution cannot be reconciled with the "same offense" prohibition of the Double Jeopardy Clause.

---

**6.** That the legislature intended the "fencing" element to be shown by proof of other incidents of theft by receiving is evidenced by section 18–4–411, C.R.S.1973 (1981 Supp.). This statute declares it to be prima facie evidence that the person is engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit when the offense charged under section 18–4–401(1) involves three or more separate stolen things of value each of which is the property of a separate owner.

■ The People nevertheless argue that the Double Jeopardy Clause was not violated because the acts of theft on March 29 and April 5, which constituted the basis of the second prosecution, were not separately charged in the first prosecution but merely constituted the evidentiary basis of the "fencing" element of that prosecution. We are unpersuaded by this argument. Although the March 29th and April 5th transactions were not specifically alleged in the first prosecution, these offenses were part and parcel of the "allowable unit of prosecution" authorized by section 18–4–410. Having chosen to charge the defendant with violating the "fencing" provisions of the statute in the first prosecution, it matters not in our view that these transactions were alleged under the generic "fencing" language of section 18–4–410(6). What is significant for purposes of double jeopardy protection is that these transactions constituted the factual basis of the defendant's conviction under the "fencing" element in the first prosecution.

■ Admittedly, the People might have chosen to charge the defendant with three counts of felony theft by receiving and obtained convictions on each count without running afoul of the Double Jeopardy Clause. However, the People chose a different course of action by initially charging the defendant with the enhanced "fencing" component of theft by receiving in accordance with the "allowable unit of prosecution" authorized by section 18–4–410. Having elected to do so, the People may not prosecute the defendant again for offenses that constituted the factual basis of the prior charge which was litigated to a conclusion under a "unit of prosecution" selected by the People in the first instance. *Sanabria v. United States, supra; Brown v. Ohio, supra; In Re Nielsen, supra.*[7]

Because the subsequent prosecution of the defendant for the two transactions of theft by receiving on March 29 and April 5, 1978, were for the same offenses included in the first prosecution for the statutory offense of theft by receiving while engaged in the business of buying, selling or otherwise disposing of stolen goods for a profit, we conclude that the defendant was placed in jeopardy twice for the same offenses in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article II, Section 18 of the Colorado Constitution.

The judgment is reversed.

---

**7.** Our decision here is not intended to bar a separate prosecution where "similar offense" evidence is not an element of the crime charged but is merely offered as relevant evidence on an essential ingredient of the crime charged, such as identity or intent. Under these circumstances the similar offense evidence would not fall within the statutorily prescribed "allowable unit of prosecution." Thus, a separate prosecution for the offense on which the "similar offense" evidence is based would not implicate the double jeopardy principles involved in this case.