**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Ralph S. ALLEN, Defendant–Appellee.**

No. 91CA0648.

Colorado Court of Appeals, Div. III.

July 2, 1992.

Rehearing Denied Aug. 13, 1992.

Certiorari Granted Jan. 11, 1993.

Donald E. Mielke, Jefferson County Dist. Atty., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Office of Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for defendant-appellee.

Opinion by Judge JONES.

The People appeal the vacation of the conviction and sentence of defendant, Ralph S. Allen, following a district court order holding that his prosecution was barred by the double jeopardy clause of the United States and Colorado Constitutions. We affirm.

The genesis of this appeal was a hearing on January 11, 1988, when defendant was found in contempt of court and sentenced to six months in jail for violating a permanent restraining order because he had confronted his wife inside the marital home on January 2, 1988. As a result of this confrontation, he was also charged with second degree burglary, criminal mischief, menacing, and criminal trespass. Defendant filed a motion to dismiss these criminal counts, which the trial court granted on August 16, 1988, on the ground that they were barred by double jeopardy principles.

Upon appeal of the order dismissing the charges against defendant, this court held that the prior contempt adjudication did not bar subsequent criminal prosecution on double jeopardy grounds. *People v. Allen,*

787 P.2d 174 (Colo.App.1989). Inasmuch as defendant did not appropriately seek a rehearing with this court, further review of that ruling was precluded by the appellate rules of procedure.

After a jury trial which began on March 27, 1990, defendant was acquitted of second degree burglary and criminal mischief and convicted of criminal trespass and misdemeanor menacing. He then filed two Crim.P. 35(c) motions, the first of which was denied. His second Crim.P. 35(c) motion, filed on June 4, 1990, alleged that his convictions were barred under the double jeopardy principles enunciated in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

On March 19, 1991, the district court granted this second motion and vacated defendant's conviction and sentence, holding that the double jeopardy standard annunciated in the *Grady* case must be retroactively applied. This appeal followed.

## I.

The People contend that the trial court erred by ruling that double jeopardy principles barred defendant's criminal prosecution and convictions based on the retroactive application of the United States Supreme Court's holding in *Grady v. Corbin, supra.* We disagree.

■ The double jeopardy clauses of the Fifth Amendment and Colo. Const. art. II, § 18, protect an accused against being twice placed in jeopardy for the same offense. *People v. Williams*, 651 P.2d 899 (Colo.1982). These prohibitions against double jeopardy apply to both criminal and quasi-criminal actions.

■ Specifically, when an individual imprisoned for contempt is given a punitive sentence, as opposed to a remedial sentence, the protections against double jeopardy apply. *People v. Matheson*, 671 P.2d 968 (Colo.App.1983); *see also In Interest of J.E.S.*, 817 P.2d 508 (Colo.1991) ("The judiciary's authority to punish for contempt of court has long been recognized as an inherent power essential to the effective administration of justice.").

■ Here, as in *Matheson*, the trial court sentenced defendant for a period of definite duration, and the defendant could not reduce the sentence by proving his willingness to comply with the restraining order. Thus, we initially conclude that the trial court imposed a punitive sentence. Accordingly, proscriptions against double jeopardy apply.

In determining whether double jeopardy would bar a subsequent criminal prosecution, our courts have previously applied the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Boulies v. People*, 770 P.2d 1274 (Colo.1989); *People v. Williams, supra; People v. Allen, supra.*

The principal focus of the *Blockburger* test is on the elements of each offense. Thus:

> If *each offense* requires proof of a fact which the other does not, the two offenses are sufficiently distinguishable for purposes of successive prosecutions, notwithstanding a substantial overlap in the proof required to establish the separate crimes.

*Boulies v. People, supra* (emphasis in original). *See Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In *People v. Allen*, utilization of the *Blockburger* analysis led this court to conclude that double jeopardy does not preclude defendant's criminal prosecution, under these facts, inasmuch as the criminal offenses with which defendant is charged require proof of facts different from those upon which the previous contempt adjudication was based. However, when the double jeopardy test of *Grady* is applied to these same facts, it mandates the opposite result from that originally reached in *People v. Allen, supra.*

The controlling test set forth in *Grady* requires that a subsequent prosecution must do more than merely survive the *Blockburger* test. The *Grady* court declared that:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential ele-

ment of an offense charged in that prosecution, will prove *conduct* that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what *conduct* the State will prove, not the evidence the State will use to prove that conduct. (emphasis added)

■ The application of the *Grady* test requires that a reviewing court examine the record to determine whether the same *conduct* that constituted the basis for the first prosecution is necessary to establish an essential element of an offense charged in a subsequent prosecution. If the record reflects that the entirety of the conduct for which defendant was convicted in the first prosecution will also be used to establish the elements of the second prosecution, then the double jeopardy bar is triggered. *See Grady v. Corbin, supra.*

■ Here, the transcript from the county court reflects that the court held defendant in contempt of its permanent restraining order based upon its finding that: "The evidence that I have heard is absolutely uncontroverted that he smashed through the door, that he threatened to kill [his wife], that he terrified her and she had to flee from the residence."

In district court, defendant was convicted of second degree criminal trespass and menacing. The crime of second degree criminal trespass is committed when a person unlawfully enters or remains in or upon premises which are enclosed. Section 18–4–503(1), C.R.S. (1986 Repl.Vol. 8B). The crime of menacing is committed if, by any threat or action, a person knowingly places another person in fear of imminent serious bodily injury. Section 18–3–206, C.R.S. (1986 Repl.Vol. 8B).

■ The conduct needed to establish the essential elements of the crimes of criminal trespass and menacing is the same conduct for which defendant was held in contempt. Thus, the *Grady* double jeopardy threshold is met. And, because the constitutional guarantee against double jeopardy is significantly different from other procedural guarantees, double jeopardy protections are accorded retroactive effect. *Robinson*

*v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Boulies v. People, supra;* Crim.P. 35(c)(1). Accordingly, under the mandate imposed by *Grady*, we conclude that the double jeopardy clause of the United States and Colorado constitutions bars the prosecution of defendant on the criminal charges subsequent to his contempt adjudication.

## II.

The People additionally contend that the trial court abused its discretion by ruling that there was no procedural bar to defendant's second Crim.P. 35(c) motion. We disagree.

■ The People rely upon *Turman v. Buckallew*, 784 P.2d 774 (Colo.1989) for the proposition that, under Crim.P. 35(c)(3): "The court need not entertain a second motion or successive motions for similar relief based upon the same or similar allegations on behalf of the same prisoner."

They observe that, during the hearing on defendant's first Crim.P. 35(c) motion, wherein he had alleged ineffective assistance of counsel, the defendant argued that he had been prejudiced by his appellate lawyer's negligent failure to file a timely petition for rehearing in *People v. Allen, supra*. He asserted that such failure deprived him of his right to seek certiorari review, at which time the *Grady* ruling could have been successfully used as a grounds for reversing the decision in *People v. Allen, supra*. Accordingly, the People argue that, because the *Grady* decision was introduced as a basis for defendant's first Crim.P. 35(c) motion, his second Crim.P. 35(c) motion, wherein he asserted that his convictions violated double jeopardy principles enunciated in *Grady*, should have been barred under Crim.P. 35(c)(3).

The People's reliance upon Crim.P. 35(c)(3) is misplaced. Crim.P. 35(c)(1) specifically provides that a person whose appeal of a conviction is pending "may file an application for post-conviction review upon the ground that there has been a significant change in the law, applied to the applicant's conviction or sentence, allowing in

the interests of justice retroactive application of the changed legal standard."

Crim.P. 35(c)(1) is the procedural provision applicable here because defendant filed his first Crim.P. 35(c) motion *before* the ruling was announced. Thus, defendant was *unaware* of the new double jeopardy legal standard upon filing his first motion.

Contrary circumstances in *Turman v. Buckallew, supra,* compelled the supreme court to declare that when a post-conviction application is filed, it should contain all factual and legal contentions which the applicant *knew* at the time of filing, and failure to do so will result in a second application containing such grounds being summarily denied.

Because defendant did not *know* of the changed double jeopardy legal standard when he filed his first Crim.P. 35(c) motion, the provisions of Crim.P. 35(c)(1) mandate that his application for relief is not barred under the provisions of Crim.P. 35(c)(3).

Moreover, here, the second motion was filed on the date of the hearing on the first Crim.P. 35 motion. The order concerning the first motion reveals that the trial court did not consider the *Grady* decision as to that motion. Later, when it ruled on the second motion, the court revealed that it had not considered the *Grady* decision and the entire double jeopardy argument as to the first motion because of the language of the remand from this court in *People v. Allen, supra.*

As a result, even if we assume that the second motion asserted an issue previously presented to the court, because the trial court did not consider that issue as to the first motion, it was not precluded from doing so thereafter on its own initiative.

We, therefore, find no error in the trial court's refusal to bar defendant's second Crim.P. 35(c) motion.

The order of the trial court is affirmed.

RULAND, J., concurs.

METZGER, J., dissents.

Judge METZGER dissenting.

In my view, the majority has reached its result based on a flawed analysis of the substantive issues raised. Therefore, I respectfully dissent.

I disagree with the majority's holding that *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) dictates a dismissal of the criminal charges against defendant. That case is factually and legally distinguishable from the situation here.

*Grady v. Corbin* involved two criminal prosecutions, each of which was brought by the state and prosecuted by the same district attorney's office against the same defendant. Here, in sharp contrast, the contempt proceeding was brought by defendant's ex-wife, as an ancillary proceeding to a civil dissolution of marriage action. It was argued by her private attorney before a county judge in a proceeding for contempt.

The purpose of the double jeopardy clause, as noted in *Grady v. Corbin,* is to prevent the state, "with all its resources and powers," from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity," and to further prevent the state from seizing the opportunity to "rehearse its presentation of proof." However, these purposes are not served here where the state had no power to prevent the defendant's ex-wife from proceeding against him for contempt in the civil case, and had absolutely no authority to and did not participate in the contempt proceedings.

Secondly, I believe the majority has misconstrued the record and the contempt order in reaching its result. The critical issue is whether the trial court relied on evidence of defendant's violence in issuing its contempt order. Based on the totality of circumstances, I believe the answer is no.

In all proceedings for contempt committed out of the presence of the court, as here, the alleged contemnor must be given

notice of the purpose of the hearing, including the nature of the acts of contempt he or she is alleged to have committed. *People v. Razatos*, 699 P.2d 970 (Colo.1985).

Here, during the contempt hearing, the only notice defendant received of the allegations sought to be proved was contained in the following colloquy:

Q   And you are aware of a permanent restraining order being issued back in March of 1987?

A   I am.

Q   And you knew not to go to your residence up in Evergreen, is that correct?

A   I'm aware of that.

   .      .      .      .      .

Q   Then on January 2nd, 1988, did you go to the residence in Evergreen?

A   I'd have to take the fifth.

Defendant's attorney had notified the court that defendant had been advised to invoke his Fifth Amendment rights at this hearing. Thus, once defendant did so concerning his presence at the home, no further questions concerning the incident were asked of him.

At the conclusion of the evidence, the trial court stated:

The question this morning is whether the testimony is sufficient for me to find [defendant] in contempt of my order. And the *fact of the matter is that if [defendant] had knocked on [his wife's] door on January 2, she'd opened it and he had tendered her a Christmas present, he would still have been in contempt of my order because my order is that he stay away from that house and that he have absolutely nothing to do with her.* The evidence that I have heard is absolutely uncontroverted that he smashed through the door, that he threatened to kill her, that he terrified her, and that she had to flee from the residence. (emphasis added)

The trial court specifically found that the defendant's presence alone at the wife's house violated the order to "stay away from that house and have absolutely nothing to do with his ex-wife" and was sufficient to constitute contempt. The trial

court was thus limited to the only issue of which defendant had notice: his presence at the home. *People v. Razatos, supra.* Accordingly, the order reflected that limitation.

The majority, however, relies heavily on the trial court's last sentence concerning the defendant's violent conduct and concludes that such conduct was the basis of the contempt holding. In my view, this is a mischaracterization of the court's ruling.

The early portion of the court's order constitutes the contempt finding. The latter portion, concerning defendant's violence, is a gratuitous recitation of the facts the court heard, not a factual finding. Thus, the defendant's presence at his ex-wife's door was the conduct underlying the contempt, and his violence was separate conduct. Therefore, the People were not precluded from prosecuting the criminal action against him based upon his separate violent conduct.

Accordingly, I would reverse the trial court's order because different entities brought and prosecuted the two proceedings, because the majority's application of the *Grady v. Corbin* decision contravenes rather than furthers the purpose of the double jeopardy clause, and because different conduct constituted the basis of the two proceedings.